# WHEELING.

CORROTHERS *v.* HARRIS *et als.*

Submitted June 12, 1883—Decided December 8, 1883.

1. Equity will not interfere between parties to the relief of one against the other in a fraudulent transaction.   (p. 180.)

2. A sale under a trust-deed will not be set aside unless for weighty reasons.   (p. 182.)

3. A case in which the proof wholly failed to sustain the allegations of the bill.   (p. 181.)

The facts of the case are stated in the opinion.

*Martin & Woods* for appellant.

*James Morrow jr.* for appellee Carney.

JOHNSON, PRESIDENT:

In September, 1881, the plaintiff, John W. Corrothers, filed his bill in the circuit court of Marion county, in which he set forth and exhibited a number of deeds of trust executed by the defendant, Alpheus F. Harris, on a tract of about one hundred acres of land in said county, to secure the amounts specified in said trusts.   He charges that one of said deeds was executed to secure a debt to him, consisting of two notes one for five hundred and thirty dollars with interest and the other of five hundred and seventy-five dollars with interest, and that said Harris was insolvent and owned no property

except the said tract of land; that as he is informed and believes he was indebted to the amount of about one thousand eight hundred dollars; that the trustee, Albert S. Hayden, in the first deed of trust to secure a debt to Barns and Chisler, dated 6th February, 1878, advertised said property to be sold under said trust-deed on the 9th day of March, 1880; that the defendant, C. B. Carney, claims to be the purchaser at said sale at the price of one thousand dollars, not over one half what it was then worth, and has obtained a deed therefor.

The plaintiff charges that "said sale was not only irregularly, unlawfully and improperly made by said trustee, but that the same was in fact fraudulently and wrongfully made, as was also the deed thereunder to said Carney, for the causes and facts hereinafter stated; and that said trustee Hayden and the said Cornelius B. Carney knowingly and intentionally participated in said fraud, in order to cause said land to sell for less than it was worth, and for less than it would have sold for at a fair sale, and thereby hindered and prevented this plaintiff from realizing or making his said claims or debts out of said land, as he otherwise certainly would have done; and the plaintiff is now informed and believes, that in order to consummate said fraud and wrong on him, the said trustee, Hayden, has now in some informal way ascertained the amounts of the said debts and claims against said land of prior liens to the plaintiff's trust-liens and in fact claims to have paid them in full, but whether rightfully so ascertained and paid, this plaintiff has no means of knowing and does not in fact know, and leaving in the hands of the trustee, of the proceeds of said pretended sale, as he is informed, about two hundred and forty dollars, applicable to the plaintiff's first deed of trust, but of which he has received no part."

The facts upon which the plaintiff relies to fix the charge of fraud on the said trustee, Hayden, and the said Carney, are substantially as follows: "That the plaintiff on learning that the land was advertised for sale under the trust-deed of the 6th of February, 1878, and of the time said sale was to take place, he knowing that he could not attend in person at said sale owing to pressing and important business down the

river in the State of Pennsylvania, and on learning also that the Messrs. William E. and Thomas F. Watson contemplated attending said sale and bidding on and buying said land at said sale at a sum or price sufficient to cover the liens of this plaintiff against said land, sought and had an interview and understanding with the said Thomas F. Watson to the effect that said Watson would attend said sale, and would buy or bid in said land at a price sufficient to cover and pay the said trust-liens and claims of this plaintiff; or if he should get the land for less than the sum necessary to pay off and discharge said claims or single bills, that he would pay the residue of said claims himself, as he regarded the said lands in fact worth all that was against it;" that he gave his two single bills to said Watson; and that said Watson attended the sale, saw trustee Hayden and told him the aforesaid facts, and that he would bid one thousand five hundred dollars on said land, and that the trustee stated to him, the said Watson, that he did not want to take Harris's money for commissions, and as he, Watson, would pay the debts against it, that he had better bid, or get some one to bid for him, one thousand dollars for said land, which would answer every purpose. That said Watson saw C. B. Carney, and had an agreement with him, by which Carney agreed to bid said one thousand dollars, and as much more as might be necessary to purchase said land at a sum not exceeding the amounts of the liens against it. Said Carney did bid the one thousand dollars, and the trustee soon cried off said land on said bid.

Plaintiff does not know whether Carney informed the trustee, that he was bidding for Watson, but said Watson made known to the trustee, soon after it was sold, that Carney had bid the land in for him, to which the trustee assented, and Watson made arrangements with the trustee for the payment of the purchase-money. But in utter disregard of this arrangement and in fraud the said trustee received from Carney the said one thousand dollars, and made him a deed for said land; that but for the arrangement between the trustee and Carney, the said land would have brought nearly or quite double the sum for which it sold. Plaintiff agrees in his bill to pay one thousand five hundred dollars, for the land, if it is sold again.

Plaintiff in his bill attempts to account for his delay of almost a year and a half, as follows: "When he came home from down the river, some days after the said sale, and learning the way said sale had terminated, he was both surprised and vexed, and went to see said Watson and Hayden about the same, and was induced by them to believe that the matter could yet be arranged amicably and satisfactorily to all, so that said Harris should realize the value of his land, and pay this plaintiff his claims either in money or in said land, and in fact said Watson assured this plaintiff that he would have it so arranged, and have said Carney convey the land to the plaintiff; that in this assurance and hope he has waited until this time, but without avail. In fact he has since offered to pay said Carney the said one thousand dollars he paid for said land and a bonus besides, to convey said land to this plaintiff, and the plaintiff to pay all of said lien claims against said land not paid by the application of said one thousand dollars. All of which reasonable and just offers the said Carney refuses to accept, but claims the land under his deed aforesaid, which, the plaintiff is advised and believes, is contrary to equity and good conscience." He prays that said deed be canceled, and, after ascertaining the liens, &c., a re-sale be decreed by the court, &c.

The trustee, Hayden, denies all fraud and misconduct on his part. C. B. Carney answered the bill, in which he denies all fraud and everything charged affecting the good faith of his purchase. Depositions were taken, and on July 24, 1882, the cause was heard on bill, answers, replications, exhibits and depositions, and the plaintiff's bill was dismissed with costs.

Upon a careful consideration of the bill we are compelled to say, that, if all its allegations are true, the plaintiff does not commend himself to a court of equity, which loves justice and fairness. According to the plaintiff's claim what he and his agent, Watson, agreed to do but failed to accomplish, was a selfish scheme to prevent bidding at the trust-sale and to acquire the property at an inadequate price. The poor owner of the land was left entirely out of the case, his interests were not only not regarded, but according to this claim were plotted against. If the allegations of the bill

were true, and if the grantor in the trust-deed was the plaintiff in the cause, a court of equity would hasten to his relief; but it would be loth to lift its hand in relief of one who had entered into a fraudulent scheme to make the property sell at a low price, and thus injure the man whose land was about to be sold, or other creditors, who might lose their debts by the accomplishment of such a fraudulent purpose.

In *Troup* v. *Wood*, 4 Johns. Chy. 254, it was held, that an agreement by the owner of the execution with certain persons to prevent the usual competition at a sheriff's sale, and in order to have a small balance on the execution for the purpose of seizing other property of the debtor, is fraudulent; and the execution is deemed in law to be satisfied, there having been lands seized on the execution amounting in value to a far greater sum than the debt, and which in consequence of such fraudulent agreement sold for mere nominal prices. (*Jones* v. *Caswell*, 3 Johns. Cas. 29; *Cocks* v. *Izard*, 7 Wall. 559.)

But this ground of relief is denied in the answers of the defendants, Carney the purchaser and Hayden the trustee; and we think the proof fails to support the allegations of the bill. The plaintiff in his deposition repeats the allegations of his bill as to the arrangement he made with Watson. Watson in his deposition substantially corroborates it and testifies substantially to the allegations of the bill with reference to the arrangement he made with Carney. Hayden both in his answer and deposition contradicts Watson in most he says, but says that when he knocked the property down to Carney, Watson claimed it was his bid; but that he had no evidence, that it was his bid, and after consultation with an attorney and being advised, that he would have to make the deed to the person who bid for the property, if he insisted it was his bid, he accordingly executed the deed to Carney. He denies advising Watson to bid but one thousand dollars. Carney in his deposition, as in his answer denies every charge imputing any wrong conduct to him.

The allegations of the bill therefore fail for want of proof. It is alleged in the bill, that the property sold for a grossly

inadequate price.  It sold for one thousand dollars; and the average of the testimony would put its value at about one thousand seven hundred dollars.  The plaintiff in his bill says he is willing to give at least one thousand five hundred dollars for it.  We can not say that under the circumstances the price was so grossly inadequate as to furnish evidence of fraud.  The plaintiff's conduct, as it appears in the record, was very strange indeed.  He waited nearly eighteen months after the sale before he brought his suit to set it aside.  He seems to have been perfectly willing that the sale should stand, provided he could get the benefit of it.  Once before the sale he had offered Carney, whose trust was before his, fifty cents on the dollar for his claim.  After the sale he offered Carney ten per cent. on what he had paid for the land, if he would convey it to him.  Sales made under deeds of trust, if fair, should be sustained; they will not be set aside except for weighty reasons.  The trustee seems to have discharged his duty both at the sale and in the distribution of the proceeds.

There is no error in the decree of the circuit court, and it is affirmed.

AFFIRMED.