GLEN L. COOK *and* JENNIFER COOK

*v.*

HONORABLE C. BERKLEY LILLY,

*Judge Tenth Judicial Circuit Court, et al., etc.*

(No. 13413)

Decided October 15, 1974.

*Higinbotham & Higinbotham, George R. Higinbotham* for relators.

*Ned H. Ragland* for respondents Basil O. Bennett, and others etc.

NEELY, JUSTICE:

This Court granted a rule to show cause in this original action in prohibition to determine the validity of W.

*Va. Code,* 46-9-503 (1963) and 46-9-504 (1963) under the Fourteenth Amendment to the *United States Constitution* and *W. Va. Constitution,* Art. 3, Sec. 10.[1] As we do not find sufficient state action to sustain challenges under either the Fourteenth Amendment or *W. Va. Constitution,* Art. 3, Sec. 10, the writ of prohibition is denied.[2]

Relators purchased a mobile home from respondents in 1971 by executing a note and security agreement under which the mobile home was pledged as collateral. At the same time relators were required to purchase certain policies of insurance the amount of which the relators now claim was excessive. In 1972 relators defaulted on their installment payments to respondent, National Auto Sales, and National peacefully seized the mobile home pursuant to repossession procedures authorized by *W. Va. Code,* 46-9-503 (1963). At the time of seizure the relators were behind two payments of $115.50 each; they now claim a credit of at least that much as a result of the allegedly unlawful insurance charges.[3]

---

[1] *W. Va. Code,* 46-9-503 (1963) provides:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 9-504."

*W. Va. Code,* 46-9-504 (1963) provides in pertinent part:

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the article on sales (article 2) [§46-2-101 et seq.]. . . ."

[2] The Court has considered relators' argument that the challenged statutes also violate *W. Va. Const.,* Art. 3, Sec. 17, and find that position to be without merit.

[3] As part of the security agreement, relators purchased two credit life insurance policies at a total cost of $1,082.16. The first policy for $10,000.00 at a premium cost of $750.00 entailed the maximum

National sold the mobile home after repossession and in 1973 filed suit in the Circuit Court of Raleigh County for a deficiency of $2,015.57. National was awarded judgment against relators for that amount plus interest and costs. Relators then sought this writ of prohibition to prohibit execution on the deficiency judgment.

Relators argue that the challenged provisions of the Uniform Commercial Code, adopted by the West Virginia Legislature as *W. Va. Code,* 46-9-503 and 46-9-504 (1963), violate their Fourteenth Amendment right to due process of law. However, it is the unanimous holding of all United States Circuit Courts in which this question has been litigated that self-help repossession pursuant to the Uniform Commercial Code does not constitute state action, *Gibbs v. Titelman,* (No. 74-1062) ___ F.2d ___ (3rd Cir. August 1, 1974); *James v. Pinnix,* 495 F.2d 206 (5th Cir. 1974); *Nichols v. Tower Grove Bank,* 497 F.2d 404 (8th Cir. 1974); *Nowlin v. Professional Auto Sales, Inc.,* 496 F.2d 16 (8th Cir. 1974); *Shirley v. State National Bank,* 493 F.2d 739 (2d Cir. 1974); *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973). While this Court is not bound by lower federal court rulings, we are persuaded that under the provisions of the challenged statutes sufficient state action does not exist to bring the relators within the protection of the Fourteenth Amendment. The case of *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972), relied upon by relators, is distinguishable upon

---

permissible coverage under West Virginia law. *W. Va. Code,* 33-14-3(d) (1957) provides in part:

"The amount of insurance on the life of any debtor shall at no time exceed the amount owed by him which is repayable in installments to the creditor, or ten thousand dollars, whichever is less." Allegedly in contravention of this provision, a second policy was issued at a premium cost of $332.16. Relators claim that the second policy was illegal and therefore void. Furthermore, relators allege that the $332.16 exceeded by $42.70 the maximum permissible credit life insurance charge of $0.75 per $100.00 per annum for the amount of the debt purportedly covered by the second policy (*i.e.,* $3,859.46). Consequently, relators contend that because the second policy was issued contrary to law they were owed a credit for its premium cost of $332.16.

the grounds that in *Fuentes* state officers assisted the creditor in effecting repossession and thus introduced the state's monopoly of force on the side of the creditor without any formal notice or hearing.

Even disregarding Federal Circuit Court holdings which find no state action under the *U.C.C.* repossession provisions, it is the opinion of this Court that the United States Supreme Court has dramatically retreated from the policy enunciated in *Fuentes* by its decision in the case of *Mitchell v. W. T. Grant Co.*, U.S., 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974), where it was recognized that no violation of due process occurs when the state undertakes a rational balancing of interests between debtors and creditors, and authorizes a procedure which is reasonably fair to both groups. Even assuming *arguendo* that there existed state action in the case at bar, this Court holds that the self-help provisions under challenge are sufficiently fair to all parties to withstand Fourteenth Amendment scrutiny under the rule enunciated in *Mitchell.*

Relators also assert a right to prior notice and a hearing before repossession under *W. Va. Const.*, Art. 3, Sec. 10.[4] Traditionally, cases concerning alleged violations of due process under Art. 3, Sec. 10 have concerned state action. While a determination of what constitutes sufficient state action to bring an individual within the protection of the due process clauses is difficult in many cases, the close cases must be resolved on the basis of sound public policy with the acknowledgment that many controversies among men do not readily admit to a judicial settlement.

The repossession in this case was accomplished under a clause in the security agreement which permitted the seller or its successors in interest to take possession of the collateral in the event of default and the security

---

[4] Art. 3, Sec. 10 provides:
"No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

agreement between relators and National was a valid and binding contract.[5] The purchasers' agreement with regard to repossession of the collateral was one consideration for the contract to finance the purchase. The purchaser agreed to the remedy of repossession in his contract; only peaceful repossession is authorized by *W. Va. Code*, 46-9-503; and, the purchaser is entitled to a remedy by way of injunction in the event of wrongful repossession.

In authorizing self-help repossession, the Legislature evidently weighed the interests of debtors in securing reasonable access to credit sources; the likelihood of abuse of the repossession remedy by creditors; the likelihood of abuse by debtors of a more complicated repossession procedure; the legal remedies available to a creditor in the event of forceful refusal to surrender the property by a debtor; and, the legal remedies available to a debtor for a wrongful repossession by a creditor.

The right to self-help has long been established in the common law as an acceptable remedy. Courts must be cognizant that recourse to law is both expensive and time consuming, and that while notice, hearings, and

---

[5] The pertinent clause in the Security Agreement provides as follows:

"Customer shall be in default hereunder upon failure to pay when due any amount payable hereunder or upon failure to observe and perform any of Customer's other agreements herein contained, or if Seller in good faith believes his prospect of payment or performance is impaired. Whenever Customer is in default hereunder, the entire unpaid portion of said Total of Payments and all other sums for which Customer is liable hereunder shall become immediately due and payable at Seller's option without notice to Customer, and Seller may proceed to enforce payment of the same and to exercise any and all of the rights afforded by the Uniform Commercial Code, and, upon demand by Seller, Customer at his cost shall assemble said collateral and make it available to Seller at a place reasonably convenient to Customer and Seller. Customer agrees that in event of his default, the Seller or his successors in interest may, without notice or demand for performance or any legal process, enter any place where the collateral may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for the prior use of the collateral by Customer."

intricate procedure are appropriate and necessary in many circumstances, they also increase the cost of doing business and have potentially negative effects upon industry and commerce.

Accordingly the rule to show cause heretofore issued is discharged and the writ of prohibition for which relators pray is denied.

*WritML denied.*