304 S.E.2d 300

Flora DENNISON

v.

David JACK, Clerk of the County Commission of Braxton County, West Virginia, the Bank of Gassaway, and William Hunt, Inc.

Stephen V. GORBY and
Penelope E. Gorby

v.

Margaret D. MILLER, Clerk of the County Commission of Kanawha County, West Virginia, and the Bank of Cross Lanes.

Nos. 15733, 15732A.

Supreme Court of Appeals of
West Virginia.

March 25, 1983.

Daniel F. Hedges, Charleston, for petitioner in No. 15733.

William C. Martin, Pros. Atty. of Braxton Co., Sutton, for David Jack.

Jack D. Huffman, Huffman & Huffman, Charleston, for Bank of Gassaway.

Gary G. Markham, Bowles, McDavid, Graff & Love, Charleston, for William Hunt Real Estate, Inc.

Phillip D. Gaujot, Charleston, for petitioners in No. 15732A.

Sterl F. Shinaberry, Charleston, for respondents in No. 15732A.

McHUGH, Justice:

These two original proceedings in mandamus were consolidated for purposes of argument before this Court and involve the validity of foreclosure proceedings under trust deeds. In Action No. 15733, the Braxton County, West Virginia, residence of the petitioner, Flora Dennison, was sold pursuant to foreclosure proceedings. In that action, the respondents are David Jack, Clerk of the County Commission of Braxton County; the Bank of Gassaway and William Hunt, Inc., a/k/a William Hunt Real Estate, Inc. In Action No. 15732A, the Kanawha County, West Virginia, residence of the petitioners, Stephen V. Gorby and Penelope E. Gorby, was sold pursuant to foreclosure proceedings. In that action, the respondents are Margaret D. Miller, Clerk of the County Commission

of Kanawha County, and the Bank of Cross Lanes. By orders entered on November 12, 1982, this Court directed the respondents in both actions to show cause why relief should not be awarded against them.

By order entered on January 13, 1983, the West Virginia Bankers Association, Inc. was granted leave to file a brief *amicus curiae* with respect to both actions.[1] This Court has before it the petitions for writs of mandamus, all matters of record and the briefs and argument of counsel.

### The Dennison Property

The Chesapeake Realty Development Corporation, a foreign corporation, offered to sell through its broker, William Hunt Real Estate, Inc., a West Virginia corporation, a one acre parcel of land in Braxton County. That property was purchased by the petitioner, Flora A. Dennison, as reflected by deed dated July 24, 1981. The petitioner purchased the property from the Chesapeake Realty Development Corporation for $18,900.00, and a down payment of $5,900 was made upon the petitioner's behalf by her father.

To finance the balance of the purchase price, the petitioner, in exchange for a loan from the Bank of Gassaway, executed a note in the amount of $13,000, with interest, payable to the Bank of Gassaway. To secure payment upon the note, the petitioner executed a trust deed dated September 3, 1981, concerning the property in question.

It should be noted that the Chesapeake Realty Development Corporation was not made a party to this action. Moreover, William Hunt Real Estate, Inc. denied any involvement with respect to the note and trust deed executed by the petitioner and the subsequent foreclosure proceedings.

The record indicates that the petitioner made payments upon the note in the amount of $6,897. Thereafter, the petitioner stopped making payments. On May 7, 1982, the petitioner received a document entitled "Notice of Right to Cure Default."

---

1. The West Virginia Bankers Association, Inc. is a corporation involved in matters concerning the banking industry in West Virginia. Its members are national and state banks and trust companies operating in West Virginia.

That document indicated that the petitioner had failed to make payment for the months of April and May, 1982, upon the note. That document stated, in part, as follows:

Unless you cure default in the manner aforesaid by May 17, 1982, the above creditor shall have the right to exercise all of its rights and remedies with respect to such transaction including without limitation the right to accelerate maturity of the unpaid balance thereof and the right to take possession of all collateral securing such transaction.

Furthermore, by letter dated May 17, 1982, from Harry L. Wright, President of the Bank of Gassaway, the petitioner was again informed that she had failed to make payment upon the note. That letter stated, in part, as follows:

Therefore, unless you remit payment to the office of the Bank of Gassaway, or otherwise make provisions for a satisfactory settlement, within ten (10) days of receipt of this notice, all amounts owing under the aforesaid promissory note shall be declared due and payable in accordance with the terms of the said note and sale of the property shall be made under the terms of that certain trust deed dated September 3, 1981, and of record in the office of the Clerk of the County Commission of Braxton County, West Virginia.

Subsequently, on May 31, June 7 and June 14, 1982, a notice was published in a Braxton county newspaper that, as a result of the petitioner's default in payment upon the note, the trustee under the September 3, 1981, trust deed would, on July 2, 1982, sell the property in question to the highest responsible bidder.[2] At the public sale conducted on July 2, 1982, the property was purchased by the Bank of Gassaway. The trustee's written accounting with respect to that sale was recorded in the office of the Clerk of the County Commission of Braxton County.

The petitioner asserts that during the period in question, including the time the petitioner purchased the property, she was mentally retarded and unable to understand the significance of the above-described transactions.

### The Gorby Property

The petitioners, Stephen V. Gorby and Penelope E. Gorby, were the owners of property located in Cross Lanes, Kanawha County, West Virginia. By written agreement dated October 20, 1977, they hired W. William Goodell, d/b/a Colonial Homes, Inc., to construct a home upon that property for the sum of $84,000.[3]

To facilitate the construction of the Gorby home, Colonial Homes, Inc., by its president, W. William Goodell, in exchange for a loan from the Bank of Cross Lanes, executed a note on October 27, 1977, in the amount of $65,000, with interest, payable to the Bank of Cross Lanes. To secure payment upon that note, the petitioners executed a trust deed dated October 27, 1977, concerning the property in question.

The petition asserts that W. William Goodell, president of Colonial Homes, Inc., falsely led the petitioners to believe that the trust deed executed by the petitioners "in no way obligated the petitioners to The Bank of Cross Lanes." The petition further asserts that the petitioners were dis-

---

**2.** The notice of trustee's sale was published in the Braxton Citizen's News and stated, in part, as follows:

Default having been made in the payment of the note secured by the said deed of trust, and being required by the beneficial owner of said deed of trust to do so, I will on Friday, the second day of July, 1982, at 10:15 AM, at the front door of the courthouse of Braxton County, West Virginia, in Sutton, West Virginia, sell the above described real estate and any and all improvements thereon to the highest responsible bidder.

**3.** Paragraph number I of the October 20, 1977, agreement between the Gorbys and W. William Goodell, d/b/a Colonial Homes, Inc., stated as follows:

The Contractor agrees to provide all the materials as specified and to perform all the labor shown on the working drawings and described in the specifications for the erection of a two-story brick and frame residence for the owners on their Lot 26 at Morning Dove Estates, City of Charleston, County of Kanawha, State of West Virginia, for the consideration of $84,000.00 (Eighty-four thousand dollars).

satisfied with the construction of the home and, consequently, instituted an action against W. William Goodell and Colonial Homes, Inc. in the Circuit Court of Kanawha County. The record indicated that Colonial Homes, Inc. reduced the $65,000 note by $35,000 or $30,000 but failed to pay the remaining balance. Neither W. William Goodell nor Colonial Homes, Inc. have been made parties to this action. However, the petition indicates that the failure of W. William Goodell and Colonial Homes, Inc., upon the note, payable to the Bank of Cross Lanes, precipitated the foreclosure proceedings in question.

The answer to the petition in this action asserts that on June 10, 1980, the Bank of Cross Lanes wrote a letter to W. William Goodell which indicated that payments upon the note were delinquent. The answer asserts that a copy of that letter was sent to the petitioner, Stephen Gorby. The answer further asserts that by letter dated December 16, 1980, the Bank of Cross Lanes informed the petitioners that it held the trust deed signed by the petitioners and that the balance upon the note should be paid within thirty days.[4]

As the record indicates, on July 24, July 31, and August 7, 1982, notices appeared in a Kanawha County newspaper stating that on August 11, 1982, the petitioners' property would be sold at public sale pursuant to the trust deed. The petition asserts that prior to July 24, 1982, counsel for the petitioners advised a trustee under the trust

deed that the petitioners intended to pay the balance due upon the note "if, and in the event said W. William Goodell could not be forced to pay the same pursuant to the civil action that was filed in the Circuit Court of Kanawha County." As indicated below, however, the property of the petitioners was sold at public sale.

As the result of an agreement between counsel for the petitioners and Eber W. Light, Jr., one of the trustees under the trust deed, the public sale of the petitioners' property was continued from August 11, 1982, to a later date. The sale was subsequently conducted on October 15, 1982, and the petitioners' property was purchased by the Bank of Cross Lanes. A trustee accounting with respect to that sale was recorded in the office of the Clerk of the County Commission of Kanawha County.

The petiton and answer are in conflict as to whether the petitioners received notice that the public sale of their property would be held on October 15, 1982.

### The Dennison and Gorby Trust Deeds

The trust deed executed by Flora Dennison and the trust deed executed by Stephen V. Gorby and Penelope E. Gorby contained similar provisions.

Both trust deeds provided that the trustee or holder of the note had the right upon default in payment upon the note to enter upon the property and take possession.[5]

---

4. The letter dated December 16, 1980, from the Bank of Cross Lanes to the petitioners stated, in part, as follows:

The Bank of Cross Lanes presently holds a Deed of Trust signed by Stephen v. Gorby and Penelope E. Gorby, dated October 27, 1977 for $65,000.00 at 10%. The Deed of Trust presently has a principle [sic] balance of $35,-000.00.

Due to your unwillingness to place this note elsewhere for permanent financing as was originally planned, the Bank of Cross Lanes exercises its' option on such a demand note and requires the balance to be paid in full within thirty (30) days.

It was never this Bank's intention to hold this note beyond the construction period, and such action as we are now faced with is long over due.

We expect your immediate response.

5. The trust deed executed by Flora Dennison contained the following provision not contained in the trust deed executed by Stephen V. Gorby and Penelope E. Gorby:

In authorizing the Trustee or the holder of this Note to take possession in the event of a default as provided and defined herein, the parties of the first part are advised and understand that they may have a constitutional right to a notice and hearing prior to any such taking of possession, but as an inducement to the holder of the Note hereby secured to make said loan, the PARTIES OF THE FIRST PART HEREBY VOLUNTARILY AND KNOWINGLY WAIVE ALL RIGHTS CONFERRED BY EXISTING OR FUTURE LAW TO A NOTICE AND HEARING PRIOR TO SUCH POSSESSION AND HEREBY RELEASE TRUSTEES AND THE HOLDER OF SAID NOTE

Both trust deeds provided that upon default in payment upon the note, all indebtedness secured by the trust deed would, at the option of the holder of the note, "immediately become due and payable." In such case of default, both trust deeds provided that, upon request by the holder of the note, the trustee would proceed to foreclosure and sell the property at public auction.

Both trust deeds further provided that in the event of default, Flora Dennison and Stephen V. Gorby and Penelope E. Gorby waived personal service of notice of the sale of their property during foreclosure proceedings. Those trust deeds provided as follows:

> That in the event of sale by the Trustee, such sale shall be made in accordance with the laws of the State of West Virginia, at the date hereof, relating to sales under deeds of trust, with the exceptions herein made, and with the further exceptions that the parties of the first part covenant and agree to and they do hereby waive personal service of notice of sale, to them or either of them, their agents, successors, heirs, devisees or personal representatives, and they do further waive posting of such notice of sale at the Court House. Such sale may be adjourned from time to time without notice other than by oral proclamation at the time and place appointed for selling.

FROM ALL LIABILITY IN CONNECTION WITH ANY SUCH TAKING OF POSSESSION.

**6.** *W.Va.Code,* 38–1–1a [1965], provides, in part, as follows: "This article shall apply to deeds of trust that convey real property or some interest therein or both real property or some interest therein and personal property. Deeds of trust conveying only personal property are governed by article nine of chapter forty-six of this Code."

**7.** Chapter 117, § 6 of the 1849 Code of Virginia provided as follows:

> The trustee in any such [trust] deed, except so far as may be therein otherwise provided, shall, whenever required by any creditor secured, or any surety indemnified by the deed, or the personal representative of any such creditor or surety, after the debt due to such creditor, or for which such surety may be liable, shall have become payable, and default shall have been made in the payment thereof,

*Relevant Statutory Provisions and Contentions of the Petitioners*

The sale of real property under a trust deed is subject to the provisions of *W.Va. Code,* ch. 38, art. 1.[6]

Principally at issue in this action are the provisions of *W.Va.Code,* 38–1–3 [1931], and *W.Va.Code,* 38–1–4 [1968]. Those sections, traceable to the 1849 Code of Virginia, provide for the authority of a trustee to sell property under a trust deed and for the type of notice to which a grantor of a trust deed is entitled prior to foreclosure sale.[7]

*W.Va.Code,* 38–1–3 [1931], provides as follows:

> The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section.[8]

or of any part thereof, by the grantor, sell the property conveyed by deed, or so much thereof as may be necessary, at public auction, for cash, having first given reasonable notice of the time and place of sale; and shall apply the proceeds of sale, first to the payment of expenses attending the execution of the trust, including a commission to the trustee of five *per cent.* on the first three hundred dollars, and two *per cent.* on the residue of the proceeds, and then, *pro rata,* (or in the order of priority, if any, prescribed by the deed,) to the payment of the debts secured, and the indemnity of the sureties indemnified by the deed, and shall pay the surplus, if any, to the grantor, his heirs, personal representatives, or assigns.

**8.** *See also W.Va.Code,* 38–1–5 [1931], which provides, in part, as follows: "Such sale shall be made upon such terms as are mentioned in such deed...."

*W.Va.Code*, 38-1-4 [1968], as amended during the period in question, provides as follows:

When any property is about to be sold under a trust deed, the trustee shall, unless it be otherwise provided in such trust deed, or in the opinion of the trustee the property to be sold be of less value than three hundred dollars, publish a notice of such sale as a Class III legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publication area for such publication shall be the county where the property is located. If, in the opinion of the trustee, the property be of less value than three hundred dollars, such notice of sale shall be posted at least twenty days prior thereto at the front door of the courthouse of the county in which the property to be sold is, and three other public places at least in the county, one of which shall be as near as the premises to be sold (in case the sale be of real estate) as practicable; and in all cases whether the notice be published or not, a copy of such notice shall be served on the grantor in such trust deed, or his agent or personal representative, if he or they be within the county, at least twenty days prior to the sale. Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property, or both, conveyed thereby; and (f) the terms of sale.[9]

As *W.Va.Code*, 38-1-4 [1968], indicates, some type of notice, whether in the form of publication, posting or service, must be given to the grantor of a trust deed prior to foreclosure sale, unless otherwise provided in the trust deed.[10] Subsequent to the foreclosure sale, an accounting of that sale must be filed by the trustee in the appropriate county.[11]

The petitioners contend, *inter alia*, that the provisions of *W.Va.Code*, ch. 38, art. 1, relating to the public sale of property under trust deeds, are confiscatory, violative of the due process provisions of *W.Va. Const.*, art. III, § 10, and contrary to the public policy of this State. Specifically, the petitioners contend that prior to the public foreclosure sale of their property under the respective trust deeds, they were entitled to: (1) a written personal notice of that

9. *W.Va.Code*, 59-3-2(a) [1967], provides, in part, as follows: "[A] Class III legal advertisement shall be published once a week for three successive weeks, in a qualified newspaper published in the publication area...."

10. *W.Va.Code*, 38-1-4 [1968], was amended in 1980. *W.Va.Code*, 38-1-4 [1980], provides as follows:

Unless property is to be sold under a deed of trust executed and delivered prior to the first day of July, one thousand nine hundred eighty, which contains a provision waiving the requirement of published notice, or the property to be sold is in the opinion of the trustee of less value than three hundred dollars, the trustee shall publish a notice of such sale as a Class III legal advertisement in compliance with the provisions of article three [§ 59-3-1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county where the property is located. If, in the opinion of the trustee, the property be of less value than three hundred dollars, such notice of sale shall be posted at least twenty days prior thereto at the front door of the courthouse of the county in which the property to be sold is, and three other public places at least in the county, one of which shall be as near as the premises to be sold (in case the sale be of real estate) as practicable; and in all cases whether the notice be published or not, a copy of such notice shall be served on the grantor in such trust deed, or his agent or personal representative, if he or they be within the county, at least twenty days prior to the sale, unless service of such notice be expressly waived by the grantor in any such trust deed. Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property, or both, conveyed thereby; and (f) the terms of sale: Provided, that except as expressly provided in this section, no trust deed shall waive the requirements of publication of notice as required by this section.

11. See *W.Va.Code*, 38-1-8 [1931], and *W.Va. Code*, 38-1-9 [1931].

sale, regardless of the waiver provisions of the trust deeds, and (2) a summary judicial proceeding or hearing at which the petitioners would have had an opportunity to present legitimate defenses to the public sales in question. The petitioners ask this Court to set those public sales aside.

The respondents assert, on the other hand, that the petitioners are entitled to no relief.

### The Due Process Issue

■ As indicated above, the petitioners contend that the provisions of *W.Va.Code*, ch. 38, art. 1, violated the petitioners' right to due process under *W.Va. Const.*, art. III, § 10, insofar as those *Code* provisions permitted a foreclosure sale of the petitioners' property under the trust deeds without a prior, due process mandated, notice and hearing.[12] However, unless significant state action was involved concerning those foreclosure proceedings, the constitutional principles of due process are not applicable. *Cook v. Lilly*, 158 W.Va. 99, 208 S.E.2d 784 (1974).[13]

■ In considering the state action issue, this Court has reviewed several state and federal cases concerning foreclosure proceedings or sales under trust deeds which were similar to the foreclosures in the actions before this Court. Those cases indicate generally that state action is not significantly involved with respect to such foreclosures.

In *Kennebec, Inc. v. Bank of the West*, 88 Wash.2d 718, 565 P.2d 812 (1977), the appellants asserted that Washington's Trust Deed Act, which permitted a trustee to sell property during nonjudicial foreclosure proceedings, violated federal and state due process provisions. The appellants contended that the Act permitted foreclosure without prior, meaningful notice to the appellants and hearing. The Supreme Court of Washington, noting that "private conduct is not controlled by the Fourteenth Amendment due process clause unless significantly intertwined with state involvement," 88 Wash.2d at 721, 565 P.2d at 814, denied relief upon the basis that no significant state action was involved in the foreclosure procedure in question. The court stated as follows:

[M]ere enactment of a statute which permits private conduct, with no further significant participation by the state, is passive involvement and does not constitute 'state action.'

. . . .

Private action is not to be attributed to the state for due process purposes of the Fourteenth Amendment simply because the conduct is permitted by state law, whether statutory or judicial.

88 Wash.2d at 723 and 726, 565 P.2d at 815 and 816.

Similarly, in *Federal National Mortgage Association v. Howlett*, 521 S.W.2d 428 (Mo.1975), the appellant contended that the

---

**12.** *W.Va. Const.*, art. III, § 10, provides as follows: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Moreover, *U.S. Const.*, amend. XIV, provides, in part, as follows: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."

**13.** In *Cook v. Lilly, supra*, the relators challenged upon constitutional grounds the repossession of their mobile home. Finding that no state action was involved with respect to that repossession, we denied relief. As we stated in the *Cook v. Lilly* opinion:

This Court granted a rule to show cause in this original action in prohibition to determine the validity of W.Va.Code, 46–9–503 (1963) and 46–9–504 (1963) under the Fourteenth Amendment to the United States Constitution and W.Va. Const., Art. 3, Sect. 10.

As we do not find sufficient state action to sustain challenges under either the Fourteenth Amendment or W.Va. Const., Art. 3, Sect. 10, the writ of prohibition is denied.

. . . .

Relators also assert a right to prior notice and a hearing before repossession under W.Va. Const., Art. 3, Sect. 10. Traditionally, cases concerning alleged violations of due process under Art. 3, Sect. 10 have concerned state action. While a determination of what constitutes sufficient state action to bring an individual within the protection of the due process clauses is difficult in many cases, the close cases must be resolved on the basis of sound public policy with the acknowledgment that many controversies among men do not readily admit to a judicial settlement.

158 W.Va. at 99–100 and 102, 208 S.E.2d at 785 and 786.

Missouri foreclosure statutes, in violation of the federal and state due process clauses, deprived a person of property without legally sufficient notice or a meaningful opportunity for a hearing prior to foreclosure. The Supreme Court of Missouri determined, however, that the appellant's contention depended upon the existence of state action. The court noted that the power of sale described in the deed of trust, although recognized by statute, was private in nature and not derived from the state. No state action was found, and the court stated as follows:

> We hold that the foreclosure of the deed of trust on appellant's property was pursuant to the contractual provisions in the deed of trust and not by authority of state law. It follows that appellant's contention that state action was present on the theory that the power of sale exercised by the trustee was conferred by state statute is overruled.
>
> ....
>
> The courts play no part in the foreclosure proceedings. The contract between the parties provides for extrajudicial foreclosure and specifies the procedure to be followed. The trustee named in the deed of trust (or his duly designated successor) gives notice of the foreclosure, arranges publication in the newspaper, conducts the sale, executes and delivers the deed and disburses the money. No state agent is involved and no state action is present in these activities.

521 S.W.2d at 433 and 437.

The *Federal National Mortgage Association v. Howlett* case was followed in *Federal National Mortgage Association v. Scott*, 548 S.W.2d 545 (Mo.1977).

In *Northrip v. Federal National Mortgage Association*, 527 F.2d 23 (6th Cir. 1975), the mortgagee asserted that Michigan's mortgage foreclosure statute violat-

ed the mortgagee's due process right to notice and hearing prior to foreclosure. The Court of Appeals, however, found neither state nor federal action with respect to the foreclosure. The court indicated that the statute merely codified rather than created, the foreclosure process.

Furthermore, in *Bryant v. Jefferson Federal Savings and Loan Association*, 509 F.2d 511 (D.C.Cir.1974), the plaintiffs asserted that certain District of Columbia statutes concerning extrajudicial mortgage foreclosure procedures violated the due process clause of the Fifth Amendment to the Constitution of the United States. The statutes in question authorized the inclusion in mortgages of clauses granting to trustees the power of sale. The Court of Appeals denied relief and stated as follows:

> Finally, the statute creates no power of sale; extrajudicial foreclosure is permissible only when the instrument executed by the fee owner itself expressly authorizes the mortgagee or trustee to sell the property at a public auction if the owner defaults in his payments.
>
> ....
>
> The due process clause is a limitation on government, not private, action.
>
> ....
>
> There is no significant governmental involvement in the mortgage foreclosure practices attacked here. The power of sale was created, not through governmental enactment, but by private consensual agreement.

509 F.2d at 513.

*See also Warren v. Government National Mortgage Association*, 611 F.2d 1229 (8th Cir.1980); *Charmicor, Inc. v. Deaner*, 572 F.2d 694 (9th Cir.1978); *Levine v. Stein*, 560 F.2d 1175 (4th Cir.1977), *cert. denied* 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978); *Beaton v. Land Court*, 367 Mass. 385, 326 N.E.2d 302 (1975).[14]

---

**14.** In *Beaton v. Land Court, supra,* the court in footnote 6 stated, in part, as follows:

> No lack of notice or absence of opportunity to defend against the foreclosure is involved in this case and our discussion above suggests that a case presenting issues of such lack of notice or absence of opportunity to be heard

in defense is unlikely to arise. Only if and when such a case arises would we have occasion to determine whether the due process clause even has any applicability to nonjudicial mortgage foreclosures (i.e., those conducted by entry or by exercise of a power of sale), which follow private contractual provi-

In *Turner v. Blackburn,* 389 F.Supp. 1250 (W.D.N.C.1975), cited by the petitioners, the plaintiff asserted that North Carolina's trust deed foreclosure statutes violated her Fourteenth Amendment right to due process. The District Court, finding that state action was present during such foreclosures, held that the plaintiff was entitled to notice and hearing prior to foreclosure sale. The finding of state action in *Turner* was based upon the involvement of the clerk of the state superior court. A state statute, for example, "vested the clerk with *contempt* power to enforce a failure timely to file a complete and correct report" of the foreclosure sale. 389 F.Supp. at 1256. Furthermore, in *Turner* the state vested the clerk with "the administration of the upset bid provisions" by which an increased or upset bid triggered a resale of the property subsequent to foreclosure sale. 389 F.Supp. at 1256. We find no such powers and duties conferred by *W.Va.Code,* ch. 38, art. 1, upon the clerks of county commissions in this State, and we decline to adopt the conclusions of *Turner.*

We are of the opinion that the provisions of *W.Va.Code,* ch. 38, art. 1, constitute a legislative codification of nonjudicial foreclosure procedure under trust deeds. As the above cases indicate, that statutory scheme does not violate the right of the petitioners to due process of law. Specifically, we find the action before this Court similar to cases where little or no state action was involved in the foreclosure process. We believe that those cases constitute the weight of authority. Therefore, inasmuch as the foreclosures in the actions before this Court were without significant state involvement, we decline to impose the type of pre-foreclosure notice and hearing mandated by the due process clauses of our federal and state constitutions.

The foreclosure proceedings in the actions before this Court were private in nature and subject, principally, to the provisions of the trust deeds. Although *W.Va. Code,* 38-1-3 [1931], authorizes a trustee to sell the property at public sale when a default has occurred, that sale may only take place when, as that section provides, "all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened...." Neither *W.Va. Code,* 38-1-3 [1931], nor any other statute prescribes the substantive content of trust deeds. In particular, *W.Va.Code,* 38-1-2 [1931], which prescribes a recommended form for trust deeds, allows for "provisions the parties may agree upon." *W.Va.Code,* 38-1-2 [1931], merely indicates that, if nothing else, the date of the trust deed, the parties involved, the property, and the debt secured should be described in the trust deed.[15]

In the actions before this Court, the State of West Virginia did not directly participate in the deprivation of the petitioners' property. The State did not compel the parties to contract for the trust deeds, and the State did not instigate the foreclosure proceedings. In fact, it may be said that the provisions of *W.Va.Code,* ch. 38, art. 1, are neutral so as to benefit none of the parties unjustly. Those sections, *inter alia,* require that foreclosure proceedings be made a matter of public record in order that abuses of such proceedings may be precluded. The State was involved neither in the making of the trust deeds nor in the foreclosure process to an extent

sions or the course of the common law. The substantial and growing weight of authority in apparently analogous areas suggests that in fact no 'state action' is present in such foreclosures.

367 Mass. at 393-94, 326 N.E.2d at 307.

**15.** *W.Va.Code,* 38-1-2 [1931], provides as follows:

A trust deed to secure debts or indemnify sureties may be in the following form or to the same effect: 'This deed made the ____ day of _____, in the year ____, between _____ (the grantor) of the one part, and _____ (the trustee) of the other part, witnesseth: That the said _____ (the grantor) doth (or do) grant unto the said _____ (the trustee) the following property (here describe it). In trust to secure (here describe the debts to be secured or the sureties to be indemnified, and insert covenants, or any other provisions the parties may agree upon). Witness the following signature.'

sufficient to justify the application of due process standards.

We hold, therefore, that where a grantor executes a trust deed which confers upon the trustee a power of sale, and upon default of the grantor, the trustee, pursuant to the terms of the trust deed and *W. Va. Code*, ch. 38, art. 1, sells the property granted by the trust deed at public sale, such a sale does not involve significant action by the State of West Virginia; therefore, due process imposed notice and hearing to the grantor of the trust deed prior to the sale are not required by the Fourteenth Amendment to the Constitution of the United States or *W. Va. Const.*, art. III, § 10.

If state action had been present with respect to the foreclosure proceedings in question, this Court would have had to consider: (1) whether such foreclosures conformed to the principles of due process, in terms of notice and hearing prior to public sale, or (2) whether the petitioners waived their due process rights. However, inasmuch as we have found the absence of significant state action with respect to those foreclosures, the issues of due process notice and hearing and waiver are not before this Court.[16]

### The Public Policy Issue

■ Having determined that the provisions of *W. Va. Code*, ch. 38, art. 1, are not violative of the petitioners' constitutional right to due process, this Court now turns to the question of whether that statutory scheme violates the public policy of this State. We hold that the provisions of *W. Va. Code*, ch. 38, art. 1, which permit,

pursuant to the terms of a trust deed, a public sale of property by a trustee upon the default of the grantor of the trust deed, do not violate the public policy of this State.

■ In *Smith v. Bell*, 129 W.Va. 749, 41 S.E.2d 695 (1947), this Court held that a waiver, pursuant to the terms of a trust deed, of personal notice of a foreclosure sale did not violate public policy. As this Court stated in syllabus point 2:

The waiver by a grantor, by the terms of a deed of trust, of a particular right, for his benefit, conferred upon him by statute which does not secure the same right to every grantor in a deed of trust, does not violate any principle of public policy, is valid, and operates to satisfy or dispense with the provisions of the statute which confers such right.[17]

In *Smith*, this Court stated that public policy "exists and functions generally within a State for the protection and the regulation of matters of public morals, public health, public safety, public welfare, and similar and related subjects, and to condemn that which conflicts with the morals of the time and contravenes any established interest of society." 129 W.Va. at 759; 41 S.E.2d at 700.

One reason in particular for our conclusion in these actions that the provisions of *W. Va. Code*, ch. 38, art. 1, do not violate public policy is that, although due process imposed notice and hearing prior to foreclosure are not contemplated by those provisions, other remedies are available to the petitioners by which the public sale of their property may be precluded or challenged.

---

**16.** It should be noted that in *Smith v. Bell*, 129 W.Va. 749, 41 S.E.2d 695 (1947), this Court held in syllabus point 1 as follows:

The provision of Section 7, Chapter 72, Code, 1923, now embodied in Section 4, Article 1, Chapter 38, Code, 1931, that in all cases, whether the notice of sale be published or not, a copy of the notice shall be served on the grantor in a deed of trust, or his agent or personal representative, if he or they be within the county, at least twenty days prior to the sale, confers a particular right upon such grantor for his benefit in addition to the rights in general secured to him and all other grantors by other provisions of the statute,

and such particular right of such grantor may be waived by him by the insertion of a provision to that effect in a deed of trust.

**17.** In *Smith, supra*, this Court recognized the following principle concerning waiver:

The doctrine of waiver, from its nature, is applicable, generally speaking, to all rights or privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided such rights and privileges rest in the individual, and are intended for his sole benefit.

129 W.Va. at 760; 41 S.E.2d at 700.

The existence of such other remedies diminishes the argument that the foreclosure procedures contained within *W. Va. Code*, ch. 38, art. 1, are inherently unfair to the grantor of the trust deed. Pursuant to such other remedies, the petitioners may adjudicate their assertions that, for example, the public sales violated the provisions of chapter 46A of the West Virginia Code and that Dennison suffered from a mental infirmity during the period in question.

The grantor of a trust deed may seek a court injunction against a proposed trust deed foreclosure sale, *Wood v. The West Virginia Mortgage & Discount Corporation*, 99 W.Va. 117, 127 S.E. 917 (1925), *cf. Villers v. Wilson*, 304 S.E. 16, (W.Va.1983), or subsequent to a foreclosure sale, such a grantor may seek to have that sale set aside. *Moore v. Hamilton*, 151 W.Va. 784, 792, 155 S.E.2d 877, 882 (1967); Syl. pt. 2, *Corrothers v. Harris*, 23 W.Va. 177 (1883). In *Moore* and *Corrothers*, this Court stated that a sale under a trust deed will not be set aside unless for "weighty reasons."

In *Farquhar & Co. v. Dehaven*, 70 W.Va. 738, 75 S.E. 65 (1912), cited by the petitioners, a judgment, "without process ... and declaration filed," was confessed by a third party against the defendants and entered on behalf of the plaintiffs by the Clerk of the Circuit Court of Berkeley County. This Court condemned that practice upon the basis that, *inter alia*, it denied to the defendants adequate notice and an opportunity to be heard in court. We do not, however, find the procedure reviewed in *Farquhar* comparable to the foreclosure procedures involved in the actions before this Court, and, in any event, the petitioners in the actions before this Court have, regardless of the relief they seek in these actions, ample access to the courts by way of injunctive relief or an action to set aside the foreclosure sale, as indicated above.

This Court has reviewed all other matters raised by the petitioners in this appeal and find the same to be without merit.

The rules issued by this Court against the respondents directing them to show cause why writs of mandamus should not be awarded against them are discharged and the writs denied.

Writs denied.

McGRAW, Chief Justice, dissenting:

I cannot agree with the result reached by the majority. First, the failure of the statutory foreclosure scheme embodied in the provisions of Chapter 38, article 1 to provide the grantor an opportunity to be heard prior to sale violates due process. The "state action" which the majority finds lacking clearly appears on the face of these statutes. W.Va.Code § 38-1-3 and 38-1-4 provide for the sale of property conveyed by a deed of trust after personal service of notice of the sale upon the defaulting grantor. In the absence of contrary provisions in the trust deed, the provisions of Chapter 38, article 1, provide the exclusive mechanism by which property held under a deed of trust may be sold. *Russell v. Webster Springs Nat'l Bank*, 164 W.Va. 708, 265 S.E.2d 762 (1980). Since the statutes mandate the manner in which foreclosure under a trust deed must be conducted in such circumstances, it appears that sufficient state action exists to bring them within the ambit of the due process protections contained in W.Va. Const. art. 3, § 10.

Moreover, the failure of Chapter 38, article 1 to provide the grantor an opportunity to be heard clearly violates the public policy of the State of West Virginia. The purpose of affording an individual notice of a pending event or action is to afford him an opportunity to defend against such event or action. Under the statutory scheme today approved by the majority, the grantor of a trust deed is entitled to personal service of notice of the sale, but must stand by mutely while his home or his business is put on the auction block and sold to another, often for a fraction of its value, notwithstanding the fact that the grantor may have a perfectly legitimate defense which would prevent the sale if it could only be brought to the attention of a court empowered to act on the grantor's behalf. The grantor is, in effect, "denied his basic right of protest or defense before his property is taken." *State ex rel. Payne*

*v. Waldren,* 156 W.Va. 60, 190 S.E.2d 770, 778 (1972).

The fact that the grantor may institute proceedings to bring his objections to the notice of the courts by injunction or by a suit to set aside the sale does not justify the defects in the statutory scheme. In any such action the grantor would be compelled to bear the burden of proof and, at least initially, the costs of the action. If a hearing were provided prior to the sale, the grantor could raise any objections as a manner of defense, without having to bear such burdens. The inconvenience to the trustee of requiring a pre-sale hearing on the other hand is minimal. In most cases the question would be simply whether the grantor had in fact defaulted. Consequently, the provisions of Chapter 38, article 1 are violative of due process and of the public policy of the State of West Virginia insofar as they do not provide the grantor of a trust deed an opportunity to be heard prior to the foreclosure sale.

Of course, the foreclosures in this case were controlled not by the terms of the statute, but by the express provisions of the deeds of trust. There is no question that the grantor of a trust deed may forego, by agreement to the terms of the instrument, any rights he may have to notice and an opportunity to be heard prior to sale. However, a waiver of such rights is effective only if it is knowing and voluntary. *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981). Courts indulge every reasonable presumption against waiver of fundamental rights. *State v. Mollohan,* 166 W.Va. 60, 272 S.E.2d 454 (1980). The burden of proving waiver is on the party asserting it. *See White v. Comm.,* 214 Va. 559, 203 S.E.2d 443 (1974).

In circumstances such as these, where property conveyed by a deed of trust is sold by the trustee upon default of the grantor, pursuant to the terms of the trust deed, without personal notice or an opportunity to be heard, the very least that is required is a hearing to determine whether the waiver of notice and an opportunity to be heard was knowing and voluntary.

The danger of not providing such a hearing is illustrated by the case of petitioner Dennison, who alleges that she was incompetent to make an effective waiver of her rights during the period in question. A hearing on this issue would protect those unable to understand the consequences of their actions from losing their homes and their land to unscrupulous speculators who could take advantage of the ill and infirm by inducing them to agree to such terms. This danger exists when we permit summary foreclosures without affording the grantor an opportunity to be heard prior to the sale. Consequently, I would hold that where, pursuant to the terms of a deed of trust, the grantor waives his right to personal notice and an opportunity to be heard prior to sale, such grantor is at least entitled to a hearing on the question of whether such provisions constitute an intelligent, voluntary and knowing waiver of his rights.