IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 14-0143

_____

**FILED**

**November 12, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

NANCY SOSTARIC and
STJEPAN SOSTARIC,
Defendants Below, Petitioners

v.

SALLY MARSHALL,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Morgan County
The Honorable Michael D. Lorensen, Judge
Civil Action No. 12-C-160

REVERSED AND REMANDED

_____

Submitted: October 14, 2014
Filed: November 12, 2014

Nancy Sostaric                                   Sally Marshall
Stjepan Sostaric                                 *Pro Se*
*Pro Se*                                         Berkeley Springs, West Virginia
Falls Church, Virginia

JUSTICE KETCHUM delivered the Opinion of the Court.
CHIEF JUSTICE DAVIS dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1.      A trust deed grantor may assert, as a defense in a lawsuit seeking a deficiency judgment, that the fair market value of the secured real property was not obtained at a trust deed foreclosure sale.  In view of this holding, Syllabus Point 4 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997) is overruled.

2.      A fair market value determination in a lawsuit seeking a deficiency judgment following a trust deed foreclosure sale must be asserted by the deficiency defendant.  Unless the deficiency defendant requests such a determination, the foreclosure sale price, rather than the property's fair market value, will be used to compute the deficiency.

3.      If a circuit court in a lawsuit seeking a deficiency judgment following a trust deed foreclosure sale determines that the fair market value of the foreclosed property is greater than the foreclosure sale price, the deficiency defendant is entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.

Justice Ketchum:

Petitioners, Nancy Sostaric and Stjepan Sostaric ("Mr. and Mrs. Sostaric"),[1] who are appearing *pro se*, appeal from an order entered January 16, 2014, by the Circuit Court of Morgan County. The circuit court granted summary judgment to respondent, Sally Marshall ("Ms. Marshall"), who is also appearing *pro se*, awarding her a deficiency judgment against Mr. and Mrs. Sostaric and attorney's fees.[2]

On appeal, Mr. and Mrs. Sostaric contend that summary judgment was improper because there exist genuine issues of material fact. They contend that the amount of the deficiency judgment awarded was too high and that it should have been adjusted to reflect the fair market value of their property when it was sold at the trust deed sale. They argue the property was sold for less than its fair market value at the trustee's foreclosure sale.

Upon review, we find that Mr. and Mrs. Sostaric may assert, as a defense in the lawsuit seeking a deficiency judgment, that the property was sold for less than its fair market value at the trust deed foreclosure sale. In so finding, we overrule Syllabus Point 4 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997). We

---

[1]At the time of the underlying proceedings, it appears that Mr. and Mrs. Sostaric were in the midst of divorce proceedings. Nevertheless, to maintain consistency with the record in this case, we will continue to refer to them as "Mr. and Mrs. Sostaric."

[2]Ms. Marshall initially was represented by counsel when she filed the lawsuit seeking the deficiency judgment against Mr. and Mrs. Sostaric.

1

therefore reverse the circuit court's summary judgment order and remand this matter for further proceedings consistent with this Opinion.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. and Mrs. Sostaric signed a "Secured Balloon Promissory Note" on December 26, 2006, whereby Ms. Marshall lent them $200,000.00. The loan was "secured by a first deed of trust on real property owned by Borrowers [Mr. and Mrs. Sostaric]" in Berkeley Springs, West Virginia.[3] The note's payment terms required that

> [t]he full amount of the note is due and payable December 30, 2013. Interest only payments will be made on a monthly basis. The first interest only payment of $1208.00 will be due on January 30, 2007 and will continue to be paid monthly thereafter. The full payment of Two Hundred Thousand Dollars ($200,000.00) will be due on December 31, 2013.

Additionally, the note included a "DEFAULT AND ACCELERATION CLAUSE," which provided:

> If Borrowers [Mr. and Mrs. Sostaric] default in the payment of this Note or in the performance of any obligation, and the default is not cured within fifteen days after Lender [Ms. Marshall] has given to Borrowers written notice of the default and time to cure, then Lender may declare the unpaid

---

[3]It appears from the record that the property securing the promissory note was the primary residence of Mr. and Mrs. Sostaric, which they had purchased in March 2006 for $155,900.

principal balance and earned interest on this Note immediately due. Borrowers and each surety, endorser, and guarantor waive all demands for payment, presentation for payment, notices of intentions to accelerate maturity, protests and notices of protest, to the extent permitted by law.

Finally, the note allowed for the recovery of attorney's fees incurred in the collection or enforcement of the note:

If this Note is given to an attorney for collection or enforcement, or if suit is brought for cancellation or enforcement, or if it is collected or enforced through probate, bankruptcy or other judicial proceeding, then Borrowers [Mr. and Mrs. Sostaric] shall pay to Lender [Ms. Marshall] all costs of collection and enforcement, including reasonable attorneys fees and court costs in addition to other amounts due.

While Mr. and Mrs. Sostaric made the required monthly interest payments for a period of time after signing the promissory note, they stopped making their monthly payments in October 2010 and subsequently defaulted on their obligation. On July 17, 2012, Ms. Marshall sent Mrs. Sostaric[5] a "NOTICE OF RIGHT TO CURE DEFAULT," which "serve[d] as formal notice that the default outline[d] below must be satisfied within thirty (30) days. Failure to cure the default by the date indicated shall result in the acceleration of the balance owing on the deed of trust and sale of collateral involved."

---

[5]It is unclear why Mr. Sostaric's name was not also included on the right to cure notice.

3

The property sought to be sold was the residence of Mr. and Mrs. Sostaric that had served as collateral for the promissory note. The notice further provided:

> **YOU HAVE THE RIGHT TO CURE THE FOLLOWING DEFAULT:**
>
> Total amount of payments in default (including all charges): $25,911.00 and any other payments or fees that may become due prior to the curing of the default.
>
> Other Required Performance Which is in Default: Show proof that 2011 real estate taxes have been paid. ($1,050.73 if paid by July 31, 2012)
>
> **Date by which payment must be made or other required performance accomplished in order to cure the default: August 17th, 2012**.

(Emphasis in original.)

Despite this notice, Mr. and Mrs. Sostaric did not cure their default. Therefore, on September 21, 2012, counsel for Ms. Marshall sent Mrs. Sostaric[6] notice of a trustee's sale of the property securing their promissory note. The notice served to

> 1. Accelerate and declare all sums secured by said Deed of Trust to be **immediately** due and payable without further demand, subject to the terms of said deed of trust and applicable law; and
>
> 2. Invoke the power given by said Deed of Trust to sell the above-described real estate at public auction on Wednesday, October 17, 2012, at 11:36 AM, at the front door

---

[6]It also is unclear why Mr. Sostaric's name was not included on the correspondence providing notice of the trustee's sale.

4

of the Morgan County Courthouse, Berkeley Springs, West Virginia.

(Emphasis in original.)

On October 17, 2012, Ms. Marshall purchased the subject property at the trustee's sale for $60,000.00. Of this amount, $58,260.75[7] was distributed to "Sally Marshall, the holder and owner of the note secured by said deed of trust to apply on principal and interest of said note[8] and obligations set forth in said deed of trust," while the remaining sum of $1,739.25 was applied to the costs of the sale. (Footnote added.)

Thereafter, on December 13, 2012, Ms. Marshall, by counsel, filed the instant lawsuit against Mr. and Mrs. Sostaric seeking a deficiency judgment for the unpaid balance of their promissory note. By order entered January 16, 2014, the circuit court awarded summary judgment to Ms. Marshall, ruling as follows:

> The Plaintiff [Ms. Marshall] has set forth evidence, by way of a sworn affidavit, of an outstanding debt in the amount of $175,407.45, the collection of which is supported by an exhibit to the Complaint, the Secured Balloon Promissory Note. Further, the Plaintiff has set forth evidence, by way of a sworn affidavit, of attorneys' fees in the amount of $1,749.25, the collection of which is supported by an exhibit to the Complaint, the Secured Balloon Promissory Note.

---

[7]The "TRUSTEE'S REPORT OF SALE UNDER DEED OF TRUST" indicates that $58,250.75 of the sales proceeds was applied to reduce the indebtedness under the promissory note.

[8]The "Disclosure Form Trustee Report of Sale" indicated that the "Total Secured Indebtedness at Foreclosure [was] 231,660.68."

5

The court also awarded Ms. Marshall post-judgment interest on this award. From this adverse ruling, Mr. and Mrs. Sostaric now appeal to this Court.[9]

## II.

### STANDARD OF REVIEW

Mr. and Mrs. Sostaric appeal from the circuit court's order granting summary judgment. We previously have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). We afford a plenary review to a lower court's order awarding summary judgment: "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

---

[9]There is no contention that the trust deed sale was invalid or defective. Our review of the record reveals that the foreclosure procedure and trustee's sale complied with our law and that title to the foreclosed property was legally conveyed to Ms. Marshall.

## III.

## ANALYSIS

This case involves a deficiency judgment. A deficiency judgment "is an imposition of personal liability upon a mortgagor for an unpaid balance of a secured obligation after foreclosure of the mortgage has failed to yield the full amount of the underlying debt." Lawrence R. Ahern, III, *The Law of Debtors and Creditors*, § 8:20 (2014).[10]

In this appeal, Mr. and Mrs. Sostaric contend that the circuit court's award of summary judgment to Ms. Marshall was improper because the deficiency judgment award was not adjusted to reflect the fair market value of the property securing the debt. In addressing whether a defendant may challenge the sale price of foreclosed property in a deficiency judgment lawsuit and assert that the property was sold for less than its fair market value, we will examine and consider: (1) the majority view of other jurisdictions that permit the sale price of foreclosed property to be challenged in a deficiency judgment lawsuit; and (2) West Virginia's statutory law on trust deed foreclosure sales, as well as

---

[10]We use the terms deed of trust (trust deed) and mortgage interchangeably. A deed of trust is, in effect, a mortgage. Both instruments secure payment of a debt. The primary difference is that the holder of a trust deed does not have to apply to a court in order to foreclose, whereas the holder of a mortgage is required to apply to a court in order to foreclose. For a more detailed explanation see *Arnold v. Palmer*, 224 W.Va. 495, 503 fn. 10, 686 S.E.2d 725, 733 fn.10 (2009).

this Court's ruling in *Fayette County. National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997).

## A. The Majority Rule

Our Court has recognized that "a majority of jurisdictions permit the sale price of foreclosed property to be challenged in a deficiency judgment proceeding[.]" *Fayette Cnty. Nat'l Bank v. Lilly*, 199 W.Va. at 356, 484 S.E.2d at 239. Whether by judicial decision or by statute,[11] the majority view "afford[s] the deficiency defendant the right to insist that the greater of the fair market value of the real estate or the foreclosure

[11]Statutes that define the deficiency as the difference between the mortgage obligation and the "fair value" of the foreclosed real estate include the following: Ariz. Rev. Stat. § 33-814 ("fair market value" as of the date of sale); West's Ann. Cal. Code Civ. Proc. §§ 580a ("fair market value" as of date of sale in power of sale foreclosure), 726(b) ("fair value" as of sale date in judicial foreclosure); Colo. Rev. Stat. Ann. § 38-38-106 ("fair market value"); Conn. Gen. Stat. Ann. § 49-14(a) ("actual value" as of date title vested in mortgagee in strict foreclosure); Ga. Code Ann. § 44-14-161 ("true market value" as of sale date); Idaho Code § 6-108 ("reasonable value"); Kan. Stat. Ann. § 60-2415 ("fair value"); Me. Rev. Stat. Ann. tit. 14, § 6324 ("fair market value" at time of sale); Mich. Comp. Laws Ann. § 600.3280 ("true value" at time of sale); Minn. Stat. Ann. § 582.30, subd. 5(a) ("fair market value"); Neb. Rev. Stat. § 76-1013 ("fair market value" as of sale date); Nev. Rev. Stat. §§ 40.455-40.457 ("fair market value" as of sale date); N.J. Rev. Stat. § 2A:50-3 ("fair market value"); N.Y. Real Prop. Acts. § 1371 ("fair and reasonable market value" as of sale date); N.C. Gen. Stat. § 45-21.36 ("true value" as of sale date); N.D. Cent. Code §§ 32-19-06, 32-19-06.1 ("fair value"); Okla. Stat. Ann. tit. 12, § 686 ("fair and reasonable market value" as of sale date); Pa. Stat. Ann. tit. 42, § 8103 ("fair market value"); S.C. Code Ann. § 29-3-700 et seq. ("true value"); S.D. Codified Laws Ann. § 21-47-16 ("fair and reasonable value"); Tex. Prop. Code Ann. § 51.003 ("fair market value" as of sale date); Utah Code Ann. § 57-1-32 ("fair market value"); Wash. Rev. Code Ann. § 61.12.060 ("fair value"); Wis. Stat. Ann. § 846.165 ("fair value").

sale price be used in calculating the deficiency." *Restatement (Third) of Property: Mortgages*, § 8.4 cmt. a (1997).

In one such judicial decision, the Montana Supreme Court determined that its real property foreclosure statute was silent on whether the fair market value of the property could be raised in a deficiency judgment proceeding. Because the statute was silent, the court used its inherent equitable powers to require that the fair market value of the foreclosed property be determined and form the basis of any deficiency judgment award. *See Trustees of the Wash.-Idaho-Mont.-Carpenters-Emp'r Ret. Trust Fund v. Galleria P'ship*, 239 Mont. 250, 265, 780 P.2d 608, 617 (1989) ("Courts sitting in equity are empowered to determine all the questions involved in the case and to do complete justice; this includes the power to fashion an equitable remedy. . . . In the exercise of our equity jurisdiction, therefore, we deem it proper to remand to the District Court to determine the fair market value of the property[.]").

A number of other states have also adopted the majority rule through judicial decision. *See, e.g., First Union Nat'l Bank of Fla. v. Goodwin Beach P'ship*, 644 So. 2d 1361 (Fla.Dist.Ct.App. 1994) (In Florida, a party seeking deficiency judgment must present competent evidence that the mortgage indebtedness exceeds the fair market value of the property.); *Shutze v. Credithrift of Am.*, 607 So. 2d 55, 65 (Miss. 1992) (In Mississippi, in a deficiency proceeding, the mortgagee "must give the debtor fair credit for the commercially reasonable value of the collateral."); and *Licursi v. Sweeney*, 594

A.2d 396, 398 (Vt. 1991) (Vermont requires that the value of the foreclosed real estate be applied to the mortgage obligation.).

The *Restatement (Third) of Property: Mortgages*, § 8.4 cmt. a (1997), agrees with the majority rule and has adopted the

> widely held view that when the foreclosure process does not fully satisfy the mortgage obligation, the mortgagee may obtain a deficiency judgment against any person who is personally liable on that obligation. Thus, this section rejects the approach of those states that prohibit a deficiency judgment after foreclosure of a purchase money mortgage, or that prohibit deficiency judgments after a foreclosure by power of sale. On the other hand, it also rejects the traditional view that the amount realized at the foreclosure sale is automatically applied to the mortgage obligation and that the mortgagee is entitled to a judgment for the balance. Instead, **it adopts the position of the substantial number of states that, by legislation or judicial decision, afford the deficiency defendant the right to insist that the greater of the fair market value of the real estate or the foreclosure sale price be used in calculating the deficiency.** This approach enables the mortgagee to be made whole where the mortgaged real estate is insufficient to satisfy the mortgage obligation, but at the same time protects against the mortgagee purchasing the property at a deflated price, obtaining a deficiency judgment and, by reselling the real estate at a profit, achieving a recovery that exceeds the obligation. Thus, it is aimed primarily at preventing the unjust enrichment of the mortgagee. This section also protects the mortgagor from the harsh consequences of suffering both the loss of the real estate and the burden of a deficiency judgment that does not fairly recognize the value of that real estate.

(Emphasis added.) Based on its view that a deficiency defendant has the right to insist that the fair market value of the real estate be used in calculating the deficiency, section 8.4 of the *Restatement* provides:

10

(a) If the foreclosure sale price is less than the unpaid balance of the mortgage obligation, an action may be brought to recover a deficiency judgment against any person who is personally liable on the mortgage obligation in accordance with the provisions of this section.

(b) Subject to Subsections (c) and (d) of this section, the deficiency judgment is for the amount by which the mortgage obligation exceeds the foreclosure sale price.

**(c) Any person against whom such a recovery is sought may request in the proceeding in which the action for a deficiency is pending a determination of the fair market value of the real estate as of the date of the foreclosure sale.**

(d) If it is determined that the fair market value is greater than the foreclosure sale price, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.

(Emphasis added.)

One final note on section 8.4 of the *Restatement*—it requires a defendant in a deficiency proceeding to request that a fair market value determination be made: "The fair market value determination of this section is not self-executing. Unless the deficiency defendant affirmatively requests such a determination, the foreclosure sale

11

price, rather than the property's fair market value, will be used to compute the deficiency." *supra* at § 8.4 cmt. b.[12]

## B. West Virginia Rule

In West Virginia, the Legislature has provided for two types of real property foreclosure sales: judicial sales[13] and trustee sales. The present issue concerns a trustee foreclosure sale, which is set forth in W.Va. Code § 38-1-3 [1923]. It provides:

> The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section.

---

[12]In many jurisdictions, the court must conduct a hearing as to value and apply the "fair value" amount in computing a deficiency even though the deficiency defendant fails to request it. *See, e.g.*, Idaho Code Ann. § 6-108; Neb. Rev. Stat. § 76-1013; Nev. Rev. Stat. § 40.457; Okla. Stat. Ann. tit. 12, § 686; Pa. Stat. Ann. tit. 42, § 8103. Other states place the burden on the deficiency defendant to raise the "fair value" defense. *See, e.g.*, Kan. Stat. Ann. § 60-2415; Me. Rev. Stat. Ann. tit. 14, § 6324; Mich. Comp. Laws Ann. § 600.3280; N.C. Gen. Stat. § 45-21.36; N.J. Rev. Stat. § 2A:50-3; and Tex. Prop. Code Ann. § 51.003.

[13]The statutory provisions for judicial sales are found in W.Va. Code § 55-12-1 *et seq.* [1994].

The issue of whether the value of foreclosed real property may be challenged in a deficiency judgment lawsuit is not addressed by our trustee foreclosure sale statutes— W.Va. Code § 38-1-3 neither permits nor forbids such a challenge.[14]

This Court has previously considered whether the value of foreclosed real property may be challenged in a deficiency judgment lawsuit. In *Lilly*, *supra*, a divorcing couple defaulted on a promissory note that was secured by a deed of trust. The holder of the note, a bank, purchased the property at a trustee's sale and then sued the grantors of the note to recover a deficiency judgment for the balance of the amount due under the note. The grantors contended, however, that the deficiency judgment sought should be offset by the fair market value of the property securing the loan, which, they claimed, had been sold for less than its true value. The Court rejected this argument, concluding that the subject sale had complied with W.Va. Code § 38-1-3, and reasoned that

> [u]nder the current real property foreclosure scheme there is a conclusive presumption that, at the point of a deficiency judgment proceeding, the property sold was sold for a fair market value. The Lillys [grantors] now seek to have this Court redefine that presumption so that it becomes rebuttable. This we refuse to do.

*Lilly*, 199 W. Va. at 357, 484 S.E.2d at 240.

---

[14]In Syllabus Point 2 of *Dennison v. Jack*, 172 W.Va. 147, 304 S.E.2d 300 (1983), this Court held, "[t]he provisions of W.Va. Code, ch. 38, art. 1, which permit, pursuant to the terms of a trust deed, a public sale of property by a trustee upon the default of the grantor of the trust deed, do not violate the public policy of this State."

13

The Court in *Lilly* acknowledged that a "majority of jurisdictions permit the sale price of foreclosed property to be challenged in a deficiency judgment proceeding," and that "our cases have applied common law principles of equity to permit an action to set aside a foreclosure sale." 199 W.Va. at 356-57, 484 S.E.2d at 239-40. Despite its recognition that this Court had previously applied common law principles of equity in cases involving trustee foreclosure sales, the Court in *Lilly* refused to allow the deficiency defendant to assert that the foreclosed real property was sold for less than its fair market value.

*Lilly* offered two main reasons for declining to follow the majority of jurisdictions that permit the sale price of foreclosed real property to be challenged: (1) West Virginia's "trustee foreclosure laws would be unsettled were we to allow grantors to challenge the value of real property at a deficiency judgment proceeding," 199 W.Va. at 357, 484 S.E.2d at 240; and (2) the Legislature has addressed the issue in the area of consumer goods, therefore, it is up to the Legislature to address the issue in the context of a trustee's foreclosure sale of real property. 199 W.Va. at 357-58, 484 S.E.2d at 240-41. Based on this reasoning, the Court held, "A grantor may not assert, as a defense in a deficiency judgment proceeding, that the fair market value of real property was not obtained at a trustee foreclosure sale." Syllabus Point 4, *Lilly*.

The issue raised in the present case requires us to revisit our holding in *Lilly*. In Syllabus Point 2 of *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974), we held that "[a]n appellate court should not overrule a previous decision recently

14

rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." This Court has also observed that "uniformity and predictability are important in the formulation and application of our rules of property. Under the doctrine of stare decisis, a rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the imperative demands of justice." *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 437, 745 S.E.2d 461, 475 (2013) (internal citation and quotation omitted). Similarly, this Court has stated:

> No prior decision is to be reversed without good and sufficient cause; yet the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered, rather than any particular case or interest. Even if the decision affects real-estate interests and titles, there may be cases where it is plainly the duty of the court to interfere and overrule a bad decision. Precedent should not have an overwhelming or despotic influence in shaping legal decisions. No elementary or well-settled principle of law can be violated by any decision or any length of time. The benefit to the public in the future is of greater moment than any incorrect decision in the past. Where vital and important public and private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected. The reason that the rule of stare decisis was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much, not only of legislation, but of judicial decision, is based upon the broad ground of public policy, and this latter must not be lost sight of.

15

*Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 719, 143 S.E.2d 154, 163 (1965) (internal citation and quotation omitted).

With these considerations in mind, we find "good and sufficient cause" to depart from the Court's holding in Syllabus Point 4 of *Lilly*, which denies a grantor the right to assert, as a defense in a deficiency judgment proceeding, that the fair market value of real property was not obtained at a trustee foreclosure sale. We conclude that the better and more legally sound approach is to follow section 8.4 of the *Restatement*, as well as the majority of other states, and allow a defendant to assert, as a defense in a deficiency judgment proceeding, that the fair market value of real property was not obtained at a trustee foreclosure sale. We arrive at this conclusion for the following reasons.

First, our trustee foreclosure statutes, including W.Va. Code § 38-1-3, neither permit nor forbid a trust deed grantor from challenging the value of real property at a deficiency judgment proceeding. While the statute is silent on this issue, this Court has previously applied common law principles of equity to permit an action to set aside a trustee's foreclosure sale. As the Court noted in *Lilly*,

> merely because the legislature has failed to provide by statute a mechanism for challenging the value of real property obtained from a foreclosure sale, does not necessarily mean that this Court may not resolve the matter. Our trustee sale statutes do not address the issue of setting aside a foreclosure sale. But, *our cases have applied common law principles of equity to permit an action to set aside a foreclosure sale*.

199 W.Va. at 357, 484 S.E.2d at 240. (Emphasis added.)[15] We agree with the reasoning of the Montana Supreme Court who, also faced with a statute that neither permitted nor forbade such a challenge, used its inherent equitable powers to require that the fair market value of the foreclosed property be determined and form the basis of any deficiency judgment award. *See Trustees of the Wash.-Idaho-Mont.-Carpenters-Emp'r Ret. Trust Fund v. Galleria P'ship, supra.*

Further, we find that the Court's ruling in *Lilly* creates the potential for a creditor to receive a windfall at the expense of an already financially distressed trust deed grantor. Under Syllabus Point 4 of *Lilly*, the holder of the promissory note may purchase the foreclosed property at a deflated price, receive a deed to the property, and thereafter, obtain a deficiency judgment which is not subject to a fair market value challenge. Then, by reselling the real estate at its fair market value, the holder of the promissory note will achieve a double recovery that far exceeds the amount owed by the trust deed grantor. This scenario results in the unjust enrichment of the holder of the promissory note and

---

[15]*See* Syllabus Point 2, *Corrothers v. Harris*, 23 W.Va. 177 (1883) ("A sale under a trust-deed will not be set aside unless for weighty reasons."). *See also* Syllabus Point 12, *Atkinson v. Washington and Jefferson College*, 54 W.Va. 32, 46 S.E. 253 (1903) (In part: "Such sale will not be set aside, on the ground of inadequacy of price . . . [where] the evidence as to the value of the land does not clearly show that the price for which it sold is so inadequate as to shock the conscience[.]").

17

forces the trust deed grantor to suffer both the loss of their real estate and the burden of a deficiency judgment that does not fairly recognize the value of that real estate.[16]

Next, we find no authority or data demonstrating that our trustee foreclosure laws would be unsettled were we to allow a trust deed grantor to challenge the value of real property at a deficiency judgment proceeding. A majority of states

---

[16]The Missouri Supreme Court considered this issue and, like *Lilly*, followed the minority rule that does not permit a deficiency defendant to assert a fair market value challenge following a foreclosure sale. Missouri Chief Justice Richard B. Teitelman dissented to the court's ruling and discussed why denying a deficiency defendant the opportunity to present a fair market value challenge is inconsistent with the general purpose underlying a damage award:

> The purpose of a damage award is to make the injured party whole without creating a windfall. Accordingly, in nearly every context in which a party sustains damage to or the loss of a property or business interest, Missouri law measures damages by reference to fair market value. Yet in the foreclosure context, Missouri law ignores the fair market value of the foreclosed property and, instead, measures the lender's damages with reference to the foreclosure sale price. Rather than making the injured party whole, this anomaly in the law of damages, in many cases, will require the defaulting party to subsidize a substantial windfall to the lender. Aside from the fact that this anomaly long has been a part of Missouri law, there is no other compelling reason for continued adherence to a measure of damages that too often enriches one party at the expense of another. Consequently, I would hold that damages in a deficiency action should be measured by reference to the fair market value of the foreclosed property.

*First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 224-25 (Mo., 2012) (C.J. Teitelman, dissenting).

18

allow grantors to challenge the value of real property at a deficiency judgment proceeding. We have found no authority suggesting that the states that follow the majority rule suffer from unsettled foreclosure laws, nor have we found any data demonstrating that the banking institutions in those states have been negatively affected as a result of their jurisdictions adhering to the majority rule.[17]

Additionally, *Lilly* noted that the Legislature has addressed a debtor's right to challenge the sale price of consumer goods in a deficiency judgment proceeding. In

---

[17]In response to a bank's argument that allowing a defendant to present a fair market value challenge in a deficiency judgment proceeding could negatively affect banking institutions, one court noted:

> First Bank argues that changing to the fair market value approach will place all the risk in the foreclosure process onto the lender. This argument is not persuasive. By focusing only on the foreclosure process, First Bank deflects consideration of the risk management techniques available to lenders when the loan is made. A lender compensates for risk by charging an interest rate that is set both by the financial markets and by the lender's assessment of the borrower's creditworthiness. The lender also manages risk by appraising the fair market value of the property to ensure that the loan is adequately secured. Changing to a fair market value approach certainly would lessen the lender's chance of a large windfall and would mean only that First Bank, like the borrower, is losing or gaining money based on fair market value of property. The risk of loss is part of the risk of lending. That risk of loss should not be borne solely by the borrower and then amplified by measuring the deficiency by reference to the foreclosure sale price.

*First Bank*, 364 S.W.3d at 228 fn. 5 (C.J. Teitelman, dissenting).

Syllabus Point 4 of *Bank of Chapmanville v. Workman*, 185 W.Va. 161, 406 S.E.2d 58

(1991), the Court held:

> When a secured creditor is found to have sold collateral in a commercially unreasonable manner, the fair market value of the collateral is rebuttably presumed to be equal to the amount of the remaining debt; to recover a deficiency, the secured creditor must prove that the debt exceeded the fair market value of the collateral.

The Court in *Lilly* stated that "[o]ur holding in syllabus point 4 of *Bank of Chapmanville* was premised upon the statutory right of a debtor to challenge the sale price of goods at a deficiency judgment proceeding." 199 W.Va. at 358, 484 S.E.2d at 241. The Court then concluded in *Lilly* that because the Legislature addressed the issue in the area of consumer goods, it is up to the Legislature, and not the Court, to address whether a trust deed grantor may challenge the sale price of real property in a deficiency judgment proceeding following a trustee's foreclosure sale. We disagree.

The fact that the Legislature has addressed (and permitted) a debtor to challenge the sale price of consumer goods in a deficiency judgment proceeding does not vest the Legislature with the *sole* authority to permit a trust deed grantor to undertake a similar challenge following a trustee's foreclosure sale of real property. The Legislature's silence on the issue does not foreclose this Court from applying our common law principles of equity and fairness to allow a grantor to challenge the sale price of real property following a trustee's foreclosure sale. Indeed, this Court recognized in *Lilly* that "our cases have applied common law principles of equity to permit an action to set aside a foreclosure sale[.]" 199 W.Va. at 357, 484 S.E.2d at 240. The *Restatement* also

20

concludes that a court may apply common law principles of equity to allow a defendant to assert a fair market value challenge in a deficiency judgment proceeding. *See Restatement*, *supra* § 8.4 cmt. a.

Further, under the Court's holding in *Lilly*, a defendant may not assert a fair market value challenge following a trustee's foreclosure sale of real property. However, under the Court's ruling in *Bank of Chapmanville*, a defendant may assert a fair market value challenge in a deficiency judgment proceeding following a foreclosure sale involving a mobile home.[18] We find no justification for this result and find that it produces an absurdity: a mobile home owning defendant may present a fair market value challenge in a deficiency proceeding, but a real property owning defendant may not. This peculiar juxtaposition illustrates why we feel compelled to depart from the Court's holding in Syllabus Point 4 of *Lilly*.

Based on all of the foregoing, we now hold that a trust deed grantor may assert, as a defense in a lawsuit seeking a deficiency judgment, that the fair market value of the secured real property was not obtained at a trust deed foreclosure sale. In view of this holding, Syllabus Point 4 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997) is overruled. Additionally, we hold that a fair market value determination in a lawsuit seeking a deficiency judgment following a trust deed

---

[18]"A mobile home that a person uses as a private residence is a 'consumer good.'" *Bank of Chapmanville*, 185 W.Va. at 168, 406 S.E.2d at 65.

21

foreclosure sale must be asserted by the deficiency defendant. Unless the deficiency defendant requests such a determination, the foreclosure sale price, rather than the property's fair market value, will be used to compute the deficiency. Finally, we hold that if a circuit court in a lawsuit seeking a deficiency judgment following a trust deed foreclosure sale determines that the fair market value of the foreclosed property is greater than the foreclosure sale price, the deficiency defendant is entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.

Our ruling herein is consistent with the majority view of other jurisdictions, with section 8.4 of the *Restatement*, and with prior decisions from this Court that have applied common law principles of equity to permit an action to set aside a real property foreclosure sale. Our ruling will also prevent a creditor from receiving a windfall and being unjustly enriched at the expense of an already financially distressed grantor. In sum, we are on solid legal ground revisiting and overruling Syllabus Point 4 of *Lilly*.[19]

Applying this holding to the present case, we find that Mr. and Mrs. Sostaric may assert, as a defense, that the amount of the deficiency judgment awarded was too high and that it should be adjusted to reflect the fair market value of the subject

---

[19]The Court in *Lilly* also held that "a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review." Syllabus Point 3, in part. This holding remains good law.

22

property. If the circuit court determines that the fair market value of the property is greater than the foreclosure sale price, Mr. and Mrs. Sostaric are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.[20]

## IV.

## CONCLUSION

The circuit court's January 16, 2014, summary judgment order is reversed and this case is remanded for further proceedings consistent with this Opinion.

Reversed and Remanded.

---

[20]Upon remand, the circuit court's order must set forth a detailed calculation describing how it arrives at any deficiency judgment award. *See* Syllabus Point 3, *Lilly*, *supra*.

23