**FILED**

**April 15, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel.**
**John Cherian, M.D., and Weirton**
**Medical Center,**
**Petitioners,**

**vs.)  No. 21-0763** (Brooke County 19-C-31)

**The Honorable Ronald E.**
**Wilson, Judge of the Circuit**
**Court of Brooke County,**
**and Kevin and Margaret Craft,**
**Respondents.**

**MEMORANDUM DECISION**

In this petition for a writ of prohibition, John Cherian, M.D., and Weirton Medical Center, the defendants in a medical malpractice action instituted by Respondents Kevin and Margaret Craft,[1] seek to preclude the enforcement of an order denying their motion to rescind consent to supplement expert witness disclosure and to limit expert testimony. In that order, the Circuit Court of Brooke County permitted respondents' standard of care expert to testify at trial that Dr. Cherian negligently performed a stent procedure on Mr. Craft, which performance proximately contributed to Mr. Craft's injuries. Petitioners contend that the circuit court's order violates the procedural requirements of the West Virginia Medical Professional Liability Act ("MPLA") and allows respondents to allege a new theory of negligence outside the applicable statute of limitations, all to petitioners' prejudice. Petitioners contend that relief in prohibition is warranted.

This Court has considered the briefs, the record on appeal, and pertinent legal authority, as well as the oral arguments presented to this Court by the parties. Upon consideration of the same, we conclude that a rule to show cause was improvidently granted. For this reason, a memorandum decision refusing the requested writ and dismissing the case from the docket of this Court is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Petitioners appear by Edmund L. Olszewski, Jr., Esq., and Fallon C. Stephenson, Esq. The Crafts are represented by Geoffrey C. Brown, Esq.

1

**Facts and Procedural History**

On July 4, 2017, Dr. Cherian performed an emergency cardiac catheterization procedure on Mr. Craft at Weirton Medical Center ("WMC"). During the procedure, Dr. Cherian placed one stent in Mr. Craft's left anterior descending artery ("LAD") and another in his right coronary artery ("RCA"). Although Mr. Craft initially tolerated the procedure well, shortly after it was concluded, he suffered cardiac arrest and Dr. Cherian immediately attempted to re-intervene. It was then discovered that both stents had clotted and that Mr. Craft had suffered acute stent thrombosis. The Crafts contend that the acute stent thrombosis caused Mr. Craft to suffer a catastrophic anoxic brain injury.

On March 5, 2019, pursuant to West Virginia Code § 55-7B-6 of the MPLA, the Crafts provided Dr. Cherian and WMC with separate notices of claim. Attached to Dr. Cherian's notice of claim was a screening certificate of merit[2] that was executed by John P. Pirris, M.D., a cardiothoracic surgeon, in which Dr. Pirris opined that Dr. Cherian deviated from the standard of care by failing to adequately cover Mr. Craft with anticoagulant drugs throughout the stent procedure and that Dr. Cherian's deviations from the standard of care directly and proximately caused Mr. Craft to suffer an anoxic brain injury.

The Crafts filed their complaint against Dr. Cherian and WMC on April 17, 2019, alleging, consistent with the screening certificate of merit, that Dr. Cherian's failure to adequately and timely provide certain anticoagulant drugs to Mr. Craft during the stent procedure proximately caused him injury.[3] Similarly, in their subsequently filed expert witness disclosure, the Crafts indicated that Dr. Pirris would testify that Dr. Cherian deviated from the standard of care relating to the adequate and timely provision of anticoagulant drugs to Mr. Craft during the stent procedure and that such deviations caused Mr. Craft's injuries.

Petitioners subsequently advised the Crafts that they intended to challenge the admissibility of Dr. Pirris's opinions because, as a cardiothoracic surgeon, they believed that he was not qualified to opine on the issues presented.[4] In an effort to head off petitioners' challenge, the Crafts sought leave to supplement their expert witness disclosure in order to substitute Dr. Martin Zenni, II, an interventional cardiologist, for Dr. Pirris. The Crafts represented in their motion that the substitution would "not add any additional issues into the case" and would not prejudice petitioners. According to the Crafts' motion for leave to supplement, "Dr. Zenni [was] also of the opinion that Dr. Cherian failed to properly anticoagulate Mr. Craft in connection with the July 4, 2017 procedure." Petitioners consented to the Crafts' motion for leave to supplement "[b]ecause

---

[2] Respondents' claims against WMC are based upon its vicarious liability for Dr. Cherian's alleged negligence, for which respondents contend a separate screening certificate of merit is not required.

[3] Mrs. Craft alleged a claim for loss of consortium.

[4] Petitioners' standard of care expert was an interventional cardiologist.

discovery has been extended and we have a later trial date[.]"[5] The circuit court thereafter entered an agreed order granting the Crafts' motion for leave to file their supplemental expert witness disclosure.

According to the Crafts, while Dr. Zenni was preparing to be deposed by counsel for petitioners, he re-evaluated the materials provided to him, which included reviewing the catheterization lab films, frame by frame. Dr. Zenni agreed with Dr. Pirris's opinion that Dr. Cherian fell below the standard of care with respect to the use of anticoagulant drugs during Mr. Craft's procedure. However, based upon his own independent review, Dr. Zenni also opined that Dr. Cherian's poor stent technique equally contributed to the failed stenting procedure that resulted in Mr. Craft's injuries. Upon learning of Dr. Zenni's opinion, the Crafts promptly supplemented their expert witness disclosure[6] to indicate that "Dr. Zenni will also testify about the standard of care in terms of the interrelationship between Dr. Cherian's performance of the July 4, 2017 procedure itself and the relationship between that performance and the anticoagulation, which cumulatively, constitute a deviation from the standard of care."[7]

---

[5] In their motion for leave to file a supplemental expert disclosure that was filed on November 23, 2020, the Crafts noted that expert witness depositions had not yet been conducted, there was sufficient time under the pre-trial order to facilitate those depositions given that there was six months remaining on the discovery deadline, and the trial was not set to begin for another ten months.

[6] The Crafts supplemented their expert witness disclosure in advance of Dr. Zenni's deposition. Specifically, petitioners noticed Dr. Zenni on March 17, 2021, for a deposition that was to occur on March 23rd. The Crafts supplemented their expert witness disclosure on March 19th.

[7] In a March 24, 2021, letter addressed to counsel for the Crafts, Dr. Zenni explained that

> more could have been done and should have been done in the cath lab to prevent the predictable failure of the initial stent procedures.
>
> Upon review, I am convinced that Dr. Cherian's poor performance of the both [sic] stent procedures contributed to the acute stent thrombosis that occurred in both the LAD and RCA stents exacerbated in the setting of grossly inadequate AT [i.e., antithrombotic medications]. The catastrophic failure of the both [sic] stents (LAD and RCA) in a very short period of time after stent deployment confirms that both technical (stent technique) and medical treatment (AT) were both inadequate.
>
> Specifically, the RCA stent did not properly cover the full area of disease and was undersized and then [u]nderdeployed. The stent was only inflated to nominal pressure and was not post-dilated with a larger, high pressure balloon. With regard to the LAD, Dr.

3

Petitioners proceeded to cancel Dr. Zenni's deposition and, on April 16, 2021, filed a motion to rescind their consent for respondents to supplement their expert witness disclosure and to limit expert testimony. The Crafts filed a response.

By order entered on August 17, 2021, the circuit court denied petitioners' motion and ruled that respondents "will be permitted to call their expert witness, Dr. Zenni, at trial and will be permitted to pursue a negligence claim in this matter, while [petitioners] will be permitted to have their own expert testify in response."[8] The circuit court did not make findings of fact or conclusions of law in support of its interlocutory ruling nor did petitioners request the same. Nonetheless, petitioners filed a petition for a writ of prohibition with this Court seeking to preclude enforcement of the circuit court's order. We granted a rule to show cause and oral arguments were heard on March 1, 2022.

**Standard for Issuing a Writ of Prohibition**

It is well settled that "[a] writ of prohibition is an extraordinary remedy reserved for extraordinary causes." *State ex rel. Yurish v. Faircloth,* 243 W. Va. 537, 542, 847 S.E.2d 810, 815 (2020). Indeed, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). We have established the following factors that the Court should consider in determining whether a cause is, indeed, extraordinary such that a writ of prohibition should issue:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises

---

Cherian did not appropriately pretreat the LAD before stenting it. He did not properly treat inflow and outflow issues that remained after the stent was placed. The stent was under-deployed in a very calcified and diseased section of the LAD, with clear "geographic" miss with incomplete coverage of stented segment in a heavily diseased LAD.

[8] Recognizing that the order was entered approximately one month before trial, the circuit court gave the parties the option to continue the trial date in order "to make the proper preparations." The trial was thereafter continued.

new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we will consider the issue raised in the petition.

## Discussion

Petitioners offer several reasons why the circuit court erred in denying their motion to rescind their consent for respondents to supplement their expert witness disclosure and to limit expert testimony. They contend that the circuit court's order violates the procedural requirements of the MPLA by allowing Dr. Zenni to testify that Dr. Cherian negligently performed Mr. Craft's stent procedure even though that theory was not included in the screening certificate of merit and that the additional negligence theory espoused by Dr. Zenni is time barred because it was alleged outside of the applicable statute of limitations. Petitioners also argue that respondents misrepresented their intentions in substituting Dr. Zenni for Dr. Pirris and that petitioners are prejudiced by the court's ruling because, up until the disclosure of Dr. Zenni's expert opinion, which occurred two years after the filing of the complaint, petitioners' defense focused exclusively on Dr. Cherian's alleged mismanagement of the anticoagulation drugs. Petitioners contend the circuit court committed clear legal error in denying their motion and that a writ of prohibition is warranted. *See* Syl. Pt. 4, in part, *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15 (delineating the five factors that this Court will consider in deciding whether to issue a writ of prohibition, one of which is "whether the lower tribunal's order is clearly erroneous as a matter of law").

Respondents counter that the circuit court's ruling does not violate or otherwise implicate the MPLA because the statute, by its own terms, imposes *pre-suit* notice requirements, with which respondents undisputedly complied in this case.[9] Respondents further contend that they complied with West Virginia Rule of Civil Procedure 26[10] when they promptly supplemented the expert

---

[9] *See* W. Va. Code § 55-7B-6(a) ("Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section."); Syl. Pt. 4, *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019) ("Pursuant to W. Va. Code § 55-7B-6(a) and (b) [2003], no person may file a medical professional liability action against any health care provider unless, at least thirty days prior to the filing of the action, he or she has served, by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in the litigation.").

[10] Rule 26 of the West Virginia Rules of Civil Procedure provides, in pertinent part:

witness disclosure with Dr. Zenni's opinion that Dr. Cherian was negligent in his performance of the stent procedure itself. According to respondents, petitioners are not prejudiced because Dr. Zenni's opinion concerning Dr. Cherian's stenting technique arose out of the very same procedure as, and is closely tied to, the anticoagulant issue; petitioners' standard of care expert has opined that Dr. Cherian met the standard of care "at all times" during the procedure; and the trial was still six months away when the supplemental disclosure was made. Respondents further contend that they did not act in bad faith in supplementing their disclosure with Dr. Zenni's opinion and that the circuit court's discretionary ruling in denying petitioners' motion is not appropriate for extraordinary relief. Finally, respondents argue, notwithstanding petitioners' arguments here, they failed to request that the circuit court make findings of fact and conclusions of law in support of its interlocutory ruling so as to facilitate a meaningful review of the order by this Court. With respondents' final argument, we agree and, accordingly, deny the requested writ.

Ordinarily, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions and under Rules 12 or 56 *or any other motion* except as provided in subdivision (c) of this rule." W. Va. R. Civ. P. 52(a) (emphasis added).[11] However, in instances where a litigant intends

---

> (e) *Supplementation of responses*. – A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
>
> (1) A party is under a duty seasonably to supplement that party's response with respect to any question directly addressed to:
> . . . .
>
> (B) The identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.

*See also State ex rel. Tallman v. Tucker*, 234 W. Va. 713, 769 S.E.2d 502 (2015).

[11] *But see* Syl. Pt. 4, *West Va. Dept. of Health and Human Res. v. Payne*, 231 W. Va. 563, 746 S.E.2d 554 (2013) (recognizing that summary judgment orders addressing qualified immunity are immediately reviewable based upon an immune defendant's right not to be burdened with trial and holding that "[a] circuit court's order denying summary judgment on qualified immunity grounds on the basis of disputed issues of material fact must contain sufficient detail to permit meaningful appellate review. In particular, the court must identify those material facts which are disputed by competent evidence and must provide a description of the competing evidence or inferences therefrom giving rise to the dispute which preclude summary disposition."); Syl. Pt. 3, *Fayette Cty. Nat'l Bank v. Lilly*, 199 W. Va. 349, 484 S.E.2d 232 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014) (holding that "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.").

to seek extraordinary relief from an interlocutory order of a lower court where that court has no duty to make findings and conclusions, this Court has instructed that the complaining party has the burden of requesting a detailed order so that the reviewing court may have a clear understanding of the ruling being challenged. As we held in syllabus point six of *State ex rel. Allstate Insurance Company v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998),

> [a] party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

In *State ex rel. Vanderra Resources, LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019), the circuit court, "[i]n its brief order," denied several parties' cross-motions for summary judgment, expressly rejecting the proposed findings and conclusions submitted by the various parties because they went "too far." *Id.* at 39, 829 S.E.2d at 39. One of the parties subsequently sought extraordinary relief from this Court – requesting a writ of prohibition or, alternatively, mandamus – arguing that the circuit court's summary judgment order "was clearly erroneous and an abuse of the court's power because it lacked any factual or evidentiary findings." *Id.* Applying syllabus point six of *Gaughan*, we concluded that the rule to show cause was improvidently granted and denied the requested relief on the ground that the petitioning party "should have informed the circuit court in advance that it intended to file a petition for a writ with this Court and requested a detailed order." *Id.* at 44, 829 S.E.2d at 44. We reiterated that which we instructed in *Gaughan*: that, without an order

> containing detailed findings explaining the facts and evidence on which the circuit court based its ruling on the substantive issues [the petitioner] now argues, we have no means to ascertain the rationale underlying its denial of summary judgment and determine whether the factors for issuing an extraordinary writ have been met.

*Id.* at 44-45, 829 S.E.2d at 44-45; *accord State ex rel. Chafin v. Tucker*, No. 20-0685, 2021 WL 1030320 (W. Va., Mar. 17, 2021) (memorandum decision).

In this case, petitioners seek to prohibit enforcement of an interlocutory order. However, because petitioners failed to carry their burden, as we instructed in *Gaughan*, of advising the circuit court that they intended to seek an extraordinary writ to challenge its ruling and requesting that the court set forth in its "order findings of fact and conclusions of law that support and form the basis of its decision," the court's order contains neither. 203 W. Va. at 78, 508 S.E.2d at 362, syl. pt. 6,

in part.[12] Without such an order, this Court is unable to sufficiently evaluate whether, as petitioners argue, the circuit court committed clear legal error for purposes of issuing the extraordinary relief requested. *See Tucker*, at *5 ("The failure of petitioners to inform the circuit court of their intent to file a petition for extraordinary relief and their failure to request a detailed order has left this Court with no ability to conduct a meaningful appellate review."); *State ex rel. Navient Solutions, LLC v. Wilson*, No. 19-0874, 2020 WL 2765857, at *5 (W. Va., May 27, 2020) (memorandum decision) (explaining that "it is impossible to determine whether the lower court's action [i.e., denying a motion for summary judgment] is 'clearly erroneous' for purposes of issuing a writ of prohibition, where it has presented the Court with no analysis beyond a summary conclusion that there are disputed facts."); *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*, 228 W. Va. 749, 760-61, 724 S.E.2d 353, 364-65 (2012) ("[B]ecause the circuit court . . . did not make findings of fact nor conclusions of law, there is an insufficient basis to sustain the circuit court's denial of the protective order in the first instance."); *State ex rel. Brison v. Kaufman*, 213 W. Va. 624, 630, 584 S.E.2d 480, 486 (2003) (reiterating that "[t]he findings of a circuit court . . . are critical when an otherwise interlocutory order to compel production and disclosure is brought before this Court upon a request for relief in prohibition. However, the right of a litigant to file a petition for extraordinary relief in such a case carries with it the responsibility to ask the circuit court to set forth findings and conclusions in order to make the discovery ruling clear.").

In light of petitioners' failure to ensure that the circuit court's order contained findings of fact and conclusions of law explaining its decision to deny their motion to rescind their consent for respondents to supplement their expert witness disclosure and to limit expert testimony, we are unable to determine whether the court's ruling constitutes clear legal error or otherwise warrants a writ of prohibition under the factors set forth in *Hoover*. We thus conclude that the rule to show cause was improvidently granted in this case and that the petition for a writ of prohibition must be denied.

### Conclusion

For the foregoing reasons, the petition for a writ of prohibition is denied.

Writ Denied.

**ISSUED:** April 15, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment.

---

[12] To be clear, the circuit court was under no obligation to provide a detailed order absent a request by one of the parties.